## STONE *v.* STATE.

### Opinion delivered June 11, 1892.

1. *Assault and battery—Justification,*

   A police officer cannot justify an assault and battery of a prisoner on the ground that she was creating a disturbance on a public street by using loud and obscene language, and that he could not otherwise quiet her.

2. *Hearsay evidence—When prejudicial.*

   A verdict of guilty in a criminal cause, though amply sustained by competent evidence, will be set aside where hearsay evidence was improperly admitted to contradict evidence of defendant which might have mitigated the punishment.

Appeal from Garland Circuit Court.

A. M. DUFFIE, Judge.

The appellant was convicted of an assault and battery, committed on Lena Walton. The witnesses testified as follows:

D. J. Smith testified: "I heard a disturbance at Lena Walton's, and went over there. Defendant called me and another man to assist him, and we went in and helped to arrest Lena. She held back and would not go, and we three had all we could do to bring her out of the house. When I first saw her she was bleeding profusely about the head. She had a wound about the head, and was very bloody. On the way to jail she began swearing and using profane language on the street, and defendant put his hands to her throat and choked her to keep her from using such language. He choked her twice before reaching the jail. I did not see him strike her in the house. She was bleeding when I first saw her. She is a big, strong woman, and it took all three of us to get her to jail. In going to jail the other man and I had hold of her arms, and the defendant pushed from the rear. I don't know whether the defendant was mad or not, but he seemed to be. I got pretty mad."

The State then introduced J. D. Page to prove what Lena Walton testified before the police court. Defendant objected to the testimony on the ground that no foundation had been laid, and that the defendant was not a party to that suit. The court sustained the objection.

R. L. Williams testified: "I am sheriff of Garland county. A subpoena was placed in my hands for Lena Walton, but after diligent search I was unable to find her, and returned the subpoena as not served. I am informed that she has left the State."

J. D. Page was then re-called and testified: "Lena Walton swore in the police court that defendant came in her house and hit her over the head with a pistol; that

she did not resist his attempt to arrest her until he struck her with his pistol. Her face was covered with dry, clotted blood at the time. She said she wanted the officers to see what had been done to her. The defendant was present when she testified, and denied the truth of her statements. I do not know whether I have stated all that she testified to or not. I am an attorney-at-law, and she came to see me about being arrested."

The defendant testified : "I am a policeman of the City of Hot Springs, Arkansas. Some time about the first of March, Eliza Johnson came to me and requested me to go down and stop a disturbance at Lena Walton's. I went down in a short while and found Lena and a white man, with whom she was living, in a row. She was on the inside of the house and he was on the outside, and they were cursing and abusing each other. I arrested the man, and told Lena to keep quiet or I would have to arrest her. I started off with the man in charge, and Lena kept cursing and using indecent language. I saw Crosby across the street, and called him over to assist me. I went back to the house to arrest Lena. I left the man in charge of Crosby and went to the back door and demanded admittance, but she would not let me in, and I went to the other door. She tried to close that, and I stuck my foot in it to prevent her from closing it, and forced it open and demanded her arrest. She grabbed an iron poker and tried to strike me with it, but I caught it and took it away from her. She then took a flat-iron to strike me with, but I took that away from her. She then started to get a butcher knife which was lying on the table, and I struck her with my pistol and then grabbed her hands, and I struck her because I was afraid she would cut me with the knife if I did not. She is a large, powerful woman. I was unable to take her alone, and called in Mr. Smith and another man who had come up to the door to assist

me. It was all we three could do to take her out of the house. She fought, kicked and pulled back. We had a great deal of trouble in taking her to the jail.

"The knife was lying on the table. I was nearer the knife than she was. I knew she was trying to get the knife, and struck her to prevent her from getting it. She did not say she was going to get the knife, and did not threaten to cut me. I was afraid she would cut me if she got it. On the way to the jail I cut off her wind. Did this to prevent her from disturbing the people by her loud and boisterous language. The streets were full of people of both sexes, and she was using the most obscene language. When I went to the house I told Lena Walton I demanded her arrest, and in the name and by the authority of the City of Hot Springs I demanded admission."

On motion of the State, the court gave the following instruction :

"If you find from the evidence that the defendant arrested Lena Walton, and while he had her in charge he choked her to prevent her from talking, you will find him guilty of an assault and battery."

The defendant asked for, and the court refused to give, the following instruction :

"If you find from the evidence that the defendant was, at the time the offense is alleged to have been committed by him, a police officer of the City of Hot Springs, and that he had Lena Walton in charge under arrest, and that while she was in his charge she was creating a disturbance by using loud and obscene language, and that defendant was unable to quiet her or stop her except by choking her, then he had a right to use just such a force as was reasonably necessary to stop the disturbance."

At the instance of the defendant, the court gave the following:

"An officer has a right, in making an arrest, to use such force as is necessary to secure the arrest, and if he is assaulted while so doing, he has a right to use such force as is reasonably necessary to protect himself."

The court, on its own motion, gave the following :

"The courts of the country are established to punish violations of the law, and if, while defendant had Lena Walton in custody, she was disturbing the peace by using loud and obscene language, it was his duty to take her before the courts to have her punished, but he had no right to use force to prevent her."

*Leatherman & Teague* for appellant.

The court admitted improper evidence prejudicial to appellant. 22 Ark. 372; 29 *id.* 17; 33 *id.* 539; 42 *id.* 285.

*W. E. Atkinson*, Attorney General, and *Chas. T. Coleman* for appellee.

An officer is criminally responsible for any excess of force in arresting an offender or detaining him after arrest. 43 Tex. 93; 2 Tex. App. 20; 1 So. Car. 292; 4 Tex. App. 175; 7 Blackf. 74; 35 Me. 472. No unnecessary force or violence should be used in making the arrest. Mansf. Dig. sec. 2006. The improper evidence did not influence the jury, and a judgment should not be reversed except for prejudicial error. Mansf. Dig. sec. 2468; 55 Ark. 342; *ib.* 369; 54 *id.* 4; 51 *id.* 145; *ib.* 132; *Simpson* v. *State, ante,* p. 8.

MANSFIELD, J. We find no error in the court's charge to the jury. The first instruction requested by the defendant declares in effect that a police officer may justify an assault and battery on the ground that it was committed as a means of suppressing disorderly conduct. The request was properly refused.

1. Officer not justified in assaulting prisoner.

The evidence of J. D. Page, so far as it relates to the testimony of Lena Walton given in a proceeding to which the defendant was not a party, was hearsay, and

2. When hearsay evidence prejudicial.

the court erred in admitting it. The verdict is amply sustained by competent evidence. But the testimony improperly received contradicted that of the defendant as to some circumstances of the case which the jury were at liberty to consider in mitigation of his punishment if they gave credit to his statement. We cannot therefore say that the court's error was not prejudicial.

Reversed and remanded for a new trial.